ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2013 NOV 21  PM 3: 54

CLERK OF COURT

| | |
|---|---|
| JULIEANN MCNAMEE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CELLULAR SALES OF TEXAS, LLC,<br><br>Defendant. | Cause No. 4:13-cv-741-A |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**

Plaintiff Julieann McNamee ("McNamee") hereby files this Response to Defendant Cellular Sales of Texas, LLC's Motion to Dismiss for Failure to State a Claim (the "Motion") and would respectfully show the Court as follows:

### I.   FACTUAL ALLEGATIONS

Plaintiff Julieann McNamee has been diagnosed by physicians with brain trauma, Post Traumatic Stress Disorder, bipolar disorder, and a spinal condition. Plaintiff's First Amended Complaint ("FAC"), at ¶ 15. In light of Ms. McNamee's disabilities, physicians have prescribed her a service dog to assist her with her daily life and tasks. FAC, at ¶ 17. Ms. McNamee has registered this service dog with the United States Department of Justice and carries a letter from

1

her psychologist concerning the necessity of the service dog. FAC, at ¶ 18. Ms. McNamee has her service dog wear clear and obvious labels identifying it unmistakably as a service dog at all times in which the service dog assists her in public. FAC, at ¶ 19.

On or about February 16, 2013, Ms. McNamee entered the Cellular Sales store (which serviced Verizon telephones) at issue in this litigation (the "Store") for the purpose of purchasing two Subscriber Identity Module ("SIM") cards for her cellular telephone. FAC, at ¶ 20. Her service dog accompanied her, wearing its labels. *Id.* Ms. McNamee maintained appropriate control over her service dog at all times. *Id.* Instead of allowing Ms. McNamee to purchase the SIM cards, however, an employee at the Store refused her service altogether in light of the presence of her service dog, demanding that she take the service dog out of the Store. FAC, at ¶ 21. When Ms. McNamee advised the employee of her rights in this regard, the employee became enraged, screamed at Ms. McNamee to "get the hell out" and to go to a different Verizon store in the future, and violently slammed Ms. McNamee's cellular telephone onto a table, destroying the telephone and, along with it, numerous irreplaceable pictures of family members, her dog, and others contained solely in the telephone. FAC, at ¶ 22. Ms. McNamee lost, for example, all photographs taken of her grandson during the only trip he had ever taken to visit her in Texas. FAC, at ¶ 23. These photographs had inestimable value to Ms. McNamee. *Id.*

On the instructions of personnel contacted through a toll-free Verizon customer service telephone number, Ms. McNamee went back to the Store to get a replacement cellular telephone. FAC, at ¶ 24. However, another employee at the Store refused to provide the replacement telephone, observed that "they just give out service dogs to anyone," said other insulting things about Ms. McNamee and her disability, ordered Ms. McNamee out of the Store, and indicated to Ms. McNamee that she could not come back to the Store without an appointment. *Id.*

2

As a consequence, Plaintiff brings this litigation, asserting claims under the Americans with Disabilities Act (the "ADA") and the Texas Human Resources Code, as well as claims for Intentional Infliction of Emotional Distress ("IIED") and conversion.

## II.   ARGUMENT

### A.   Standard of Review

In evaluating a motion to dismiss, a court "must construe facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) is viewed with disfavor and rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citations and internal quotation marks omitted). Dismissal is appropriate "only if the complaint fails to plead enough facts to state a claim to relief that is plausible on its face." *Id.* (citations and internal quotation marks omitted). To satisfy this standard, "the complaint must provide more than conclusions, but it need not contain detailed factual allegations." *Id.* (citations and internal quotation marks omitted).

### B.   This Court Should Deny Defendant's Motion to Dismiss with Respect to Its Claims in General Because Defendant Is Vicariously Liable for the Discriminatory Actions of Its Employees and Because Plaintiff Adequately Alleges Failure to Train.

Defendant Cellular Sales asks this Court to dismiss Plaintiff's claims because Plaintiff does not allege a theory of vicarious liability sufficient to demonstrate the liability of Cellular Sales for the actions of its employees in this matter. Specifically, Defendant Cellular Sales contends that its employees acted outside the scope of their employment, if they engaged in the behavior Plaintiff alleges, because refusing to serve customers and smashing telephones does not further the business of Cellular Sales. Defendant's argument fails because it misstates the law concerning the standard for demonstrating vicarious liability.

3

As an initial matter, although Cellular Sales does not appear to contest the issue, Plaintiff's statutory discrimination claims follow common law vicarious liability principles. *See, e.g., Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574-575 (5th Cir. 2002) (noting that vicarious liability principles apply to the ADA); *Rideau v. Keller Independent School District*, 2013 WL 5663580, *3-4 (N.D. Tex. March 5, 2013) (same); *Taylor v. Richmond State Supported Living Center*, 2012 WL 6020372, *6 (S.D. Tex. Nov. 30, 2012) (same); *Bowen v. Rubin*, 385 F. Supp. 2d 168, 180 (E.D.N.Y. 2005) (noting that "[g]eneral common law agency principles apply to the ADA" and holding that vicarious liability principles apply to Title III of the ADA). Thus, Cellular Sales' position amounts to a challenge to Plaintiff's ability to demonstrate that she has satisfied the common law standard of vicarious liability. She has.

Pursuant to common law principles, "an employer is vicariously liable for the torts of [its] employees committed in the course and scope of their employment." *Bank of Texas, N.A. v. Glenny*, 405 S.W.3d 310, 314 (Tex. App.—Dallas 2013, no pet.). Cellular Sales complains that Plaintiff here has not alleged sufficiently that Cellular Sales' employees operated within the scope of their employment when they refused her service and smashed her cellular telephone. However, Cellular Sales mischaracterizes the law in suggesting that Plaintiff needs to show that Cellular Sales specifically instructed its employees to refuse disabled individuals service or smash their telephones to show vicarious liability in this matter. On the contrary, a plaintiff need not demonstrate that an employer asked its employees to perform tortious activities to prevail on tort claims against that employer through vicarious liability principles. *See, e.g., Glenny*, 405 S.W.3d at 314 ("The test is whether the employee was acting within the scope of employment, not whether the employer authorized the specific act. An employer is liable when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's

4

business and for the accomplishment of the object for which the employee was hired.") An employer is vicariously liable even for intentional and malicious tortious acts that are foreseeable considering the employee's duties. *See, e.g.*, *Mukoro v. Myers*, 2011 WL 3194781, *2 (Tex. App.—Dallas July 26, 2011, no pet.). Foreseeability is a fact issue and should not be decided on a motion to dismiss. *See, e.g.*, *Campbell v. Teco Barge Lines*, 2006 WL 1898919, *2 (S.D. Ill. 2006).

In the case at hand, Cellular Sales' employees clearly acted within the scope of their employment in putting themselves forward as the Cellular Sales employees responsible for addressing her service needs and for announcing Cellular Sales' policies with respect to having service dogs in the store. It is clear from Plaintiff's allegations that the employees were not engaged in some independent activity for their own purposes, such as running their own errands. On the contrary, they acted as sales and service representatives for Cellular Sales and, in that capacity, refused to serve Plaintiff in light of the presence of her service dog and smashed her telephone in light of her insistence on her rights in this regard. In fact, Plaintiff specifically alleges that Cellular Sales failed to train its employees properly in addressing the needs and rights of its disabled customers (*see, e.g.*, FAC at ¶ 36), thus unambiguously indicating that the alleged behavior of the employees at issue came within the scope of their employment with Cellular Sales as, after all, Cellular Sales would not train its employees on how to conduct their own affairs. In any event, scope of employment and related issues are generally fact issues and not proper subjects at the motion to dismiss stage. *See, e.g.*, *Ross v. Marshall*, 426 F.3d 745, 764 (5th Cir. 2005) ("As a general rule, course and scope of employment is a fact issue like negligence or proximate cause.") (citations and some internal punctuation omitted); *Arbelaez v.*

*Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.—Austin 2004, no pet.) ("Course and scope of employment is generally a fact issue like negligence or proximate cause.").

Furthermore, the fact that Plaintiff alleges Cellular Sales' failure to train its employees properly itself constitutes a theory of liability, as such a failure to train can constitute discrimination against the disabled. *See, e.g., Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) ("[A] reasonable inference to be drawn from [the plaintiff's] complaint is that defendants failed to adopt policies or procedures to effectively train their employees how to deal with disabled individuals. Such a failure to train can constitute a violation of the ADA, which requires owners of public accommodations . . . 'to take such steps as may be necessary to *ensure* that no individual with a disability is excluded, denied services, segregated *or otherwise treated differently* than other individuals because of the absence of auxiliary aids and services.'") (citing 42 U.S.C. § 12182(b)(2)(A)(iii)) (emphasis in original).

C. **This Court Should Deny Defendant's Motion to Dismiss with Respect to Plaintiff's Intentional Infliction of Emotional Distress Claims Because They Are Not Redundant and Because Plaintiff's Allegations Satisfy the Elements of the Claim.**

Defendant Cellular Sales contends that this Court should dismiss Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") because (1) the claim is impermissibly redundant with respect to Plaintiff's other claims, (2) Plaintiff does not allege conduct sufficiently extreme and outrageous to meet the standard required to assert the relevant claim, (3) Plaintiff does not adequately allege that Cellular Sales' employees intended to cause her severe emotional distress, and (4) Plaintiff does not adequately allege that she herself suffered severe emotional distress. All four contentions fail.

First, Plaintiff's IIED claim is not impermissibly redundant with respect to her discrimination claims. Although Defendant Cellular Sales suggests that Plaintiff's claims are all

6

predicated on precisely the same facts, they are not. Plaintiff's ADA claim seeks injunctive relief on behalf of a class and does not depend on a showing of emotional distress as an injury. On the contrary, as apparent from the statement of the ADA claim in paragraphs 31 to 38 of the FAC, Plaintiff notes Defendant's refusal to serve as the basis of injury to herself and the class. Plaintiff's ADA claim does not depend at all on the allegations of emotional distress. Likewise, her claims under Sections 121.002 and 121.004 of the Texas Human Resources Code include no such specific allegations and do not depend on such allegations for their basis. While Plaintiff's IIED claim alleges that the extreme and outrageous conduct of Defendant's employees arose during their discriminatory activity, this conduct went beyond the discrimination alleged in Plaintiff's earlier claims. Defendant smashed Plaintiff's telephone and destroyed her invaluable pictures, an act which involves not merely discrimination but malicious infliction of pain. The fact that Plaintiff's IIED claim incorporates the facts also alleged in connection with the ADA claim is of no consequence. As with many complaints, the complaint is structured with all facts laid out first and counts of action laid out next. Each count of action incorporates all facts preceding it as a matter of structure and completeness. Such incorporation has no bearing on whether one cause of action requires a particular fact for its full articulation.

Defendant's contention that Plaintiff fails to allege conduct sufficiently extreme and outrageous cannot prevail. In determining "whether certain conduct is extreme and outrageous, [a court must] consider the context and the relationship between the parties." *Tiller v. McLure*, 121 S.W.3d 709, 714 (Tex. 2003). Plaintiff brought her telephone to Defendant for service. She delivered her telephone to Defendant's employees in the expectation that they would respect the normal contours of a business-customer relationship and take care of her needs with respect to the product at issue. Instead, after refusing service and ridiculing her, Defendant's employees

smashed the telephone and destroyed pictures of inestimable value to Plaintiff. Plaintiff and other reasonable minds would certainly deem such conduct extreme and outrageous. Defendant's position to the contrary seems unreasonable. However, even if this Court views Defendant's position otherwise, when reasonable minds differ, then whether conduct is extreme or outrageous is a fact issue for trial and not the proper subject of a motion to dismiss. *See, e.g.*, *Tiller*, 121 S.W.3d at 713 ("[W]hen reasonable minds may differ, it is for the jury, subject to the court's control, to determine whether, in the particular case, the conduct was sufficiently extreme and outrageous to result in liability.") (citations omitted).

Even a cursory review of the pleadings defeats Defendant's arguments that Plaintiff has not sufficiently alleged that Defendant's employees intended to cause her severe emotional distress or that she suffered such distress. With respect to the first issue, Plaintiff alleges that Defendant's employees screamed at her and intentionally smashed her telephone onto a table. FAC, at ¶ 22. It is inconceivable that Defendant's employees undertook these actions without intending to cause her severe distress. With respect to the second issue, Plaintiff not only alleges that she suffered severe distress, but she provides specifics. Plaintiff specifically alleges that Defendant's actions caused her "extreme embarrassment, a nervous breakdown and severe mental anguish." FAC at ¶ 50. These are not mechanistic and conclusory allegations, but rather descriptions of emotional conditions suffered by Plaintiff as a result of Defendant's activities. Plaintiff further supports these descriptions with allegations that Defendant destroyed her telephone and, along with it, "numerous irreplaceable pictures of family members, her dog, and others contained solely in the telephone." FAC, at ¶ 22. These pictures included photographs of her grandson on the only trip he had ever taken to visit Ms. McNamee in Texas and had

inestimable value to Ms. McNamee. FAC, at ¶ 23. These allegations and others offer ample support for the relevant claims.

Dated: November 21, 2013

Respectfully Submitted,

*[signature]*

**Attorneys for Plaintiff**

**Mark Whitburn**
Texas Bar No. 24042144
**Sean Pevsner**
Texas Bar No. 24079130
**Whitburn & Pevsner, PLLC**
2000 E. Lamar Blvd., Suite 600
Arlington, Texas 76006
Tel: (817) 592-3488
Fax: (512) 519-2098
mwhitburn@whitburnpevsner.com

### CERTIFICATE OF SERVICE

I hereby certify that, on November 21, 2013, the foregoing document was served on counsel of record by email and by certified mail, return receipt requested, as follows:

C. Larry Carbo
Kellen R. Scott
Chamberlain, Hrdlicka,
White, Williams & Aughtry, P.C.
1200 Smith, Suite 1400
Houston, Texas 77002
larry.carbo@chamberlainlaw.com
kellen.scott@chamberlainlaw.com

*[signature]*
Mark Whitburn